I'm requesting five minutes in reservation. We are here challenging the trial court's decision to grant summary judgment in toto with respect to plaintiff's complaint. I'd like to address the issue of legal standing and capacity. Capacity is an issue that must be asserted as an affirmative defense pursuant to Federal Rule of Civil Procedure 9A. Where here the court acknowledged the rule, the court went forth and I think appropriately stated that subject matter jurisdiction, however, can be raised at any time. Are you considering standing and capacity one and the same or is it different issues? Well, I think they're different issues, but in this case, I believe they are one and the same. Because when we look at the District of Columbia statute with regards to administratively dissolved entities, it is clear that D.C. Code section 29-106.02c says that a dissolved entity continues to exist but shall not carry on activities or affairs except as is necessary to wind up its activities and affairs, liquidate assets, or apply for reinstatement. Here, we believe the court failed to give weight to the fact that Plaintiff Grant Orient was indeed administratively dissolved. However, at the time in which the litigation was undertaken and other activities were assumed, those activities were not inconsistent with Plaintiff Grant Orient winding up. The record reflects that the same year where Plaintiff Grant Orient was deemed administratively dissolved, that is 2012. The governing body of Plaintiff Grant Orient incorporated United Supreme Council AASRSJ in Tennessee, which would have been a successive entity. So the litigation brought is not at all inconsistent with the efforts of Plaintiff Grant Orient's attempts to collect its assets to protect its intellectual property, including the fact that Plaintiff Grant Orient sought registration of its trademark. I'm sorry, can I get you back to the standing question? Yes. Just hypothetically, assuming for a minute, I think that that is not right, that there is a question as to capacity to sue under the statute and whether they were within that kind of wrapping up exception. Does that mean that there is no standing or are those two different questions? I think that was Judge Quattlebaum's first question and I wasn't clear on your answer. I think for purposes of legal analysis, they are separate and distinct issues. Okay. So on that point, to follow up, you cited Rule 17 and how there might be waiver issues associated with that rule. Is capacity, is the issue of whether the scope of authority of a dissolved company the same as capacity to sue? In other words, I understand capacity under Rule 17 has waiver issues in terms of the pleading. But if you look at that rule, most of them are dealing with whether the plaintiff is a representative of some form. And I'm trying to figure out whether the scope of what constitutes winding up of affairs is really a capacity to sue issue. Well, in this case, the court found that Plaintiff Grant Orient had the capacity to sue but lacked standing to sue because Plaintiff Grant Orient in the court's interpretation was unable to enjoy injury during the period of dissolution. And I get you, I don't mean to cut you off, but assume you're right, there was standing and assume they're separate issues as you just said they were. About if they had standing, do they have the capacity to sue or the capacity to do things like file a trademark application when you're dissolved? And what I'm trying to figure out is whether that latter category of what you can do when you are dissolved is a capacity. Do you consider that a capacity to sue issue? Well, I think it is a capacity to sue issue. But the way the statute reads, it seems to intertwine the issue of capacity to sue along with standing. And I think that's a scrivener's perhaps oversight, but I think it also justifies the fact that where the D.C. statute says that the dissolved entity can sue and be sued and can undertake proceedings, that is affirmative proceedings or defensive proceedings, not necessarily within the context of winding up, then the entity then should be in a position to enjoy injury. So I think though in reading the D.C. statute, provision 29-106.02c speaks in terms of continuing existence of the entity for the specific purpose of winding up. I think we meet that statutory rule in this case because the activities assumed by Plaintiff Grant Orient were consistent with winding up. Filing a trademark and a copyright is consistent with winding up? Yes, for purposes of protecting the assets of the entity. Once the assets were protected, because for example, trademark is based upon prior use. The ownership of the mark is based upon prior use. In order to protect that and to establish ownership, registration is appropriate. With respect to copyright, in order to protect the copyright interest, registration is appropriate. So it would not be inconsistent with the winding up of affairs in order to pin down, protect the intellectual property rights so that they may be assigned to a successor. When did you first start using the – when was the first use? The first use of the trademark was prior to 1964 as reflected in the application, as well as the trademark registration. So I get that there's been a prior use, but it's a long time to wait to protect, to file the mark, isn't it? Well, true. We're speaking in terms of a voluntary association. It doesn't quite work in the same context as perhaps a corporation such as Microsoft. We're dealing with a socio-fraternal entity. I understand that you did it actually a month after the separate entity. It looks like it was in response to the defendants going into operation. Well, that's true. It was in response to an anticipated attack lodged by Defendant Supreme Council, wherein it sought to use not only the name but the goodwill and history of Plaintiff Grand Orient for purposes of unfairly competing. And the unfair competition falls directly within the services that were offered by Plaintiff Grand Orient. We're speaking in terms of the Scottish Rite, Prince Hall Scottish Rite services conferring the degrees 4 through 33 and related activities. Can I ask you a question on the trademark? And I guess this would also go to copyright and unfair competition. So the district court held that you had waived or forfeited all of those claims because you didn't address them in your opposition to summary judgment and or you didn't raise them in the complaint. Did you appeal that part of the district court's holding? Yes, Your Honor. Okay. And why was it wrong? Well, because the court did not properly construe the complaint. So the courts are directed to liberally construe a complaint within the context of Rule 8. So what about the part where it wasn't raised in opposition to summary judgment? Well, with respect to the trademark issue, particularly related to unfair competition, we did raise it. The Lone Star Steakhouse case affirms that unfair competition under Section 43 of the Lanham Act, as well as common law unfair competition, employed the same legal rubric. So it would have been unnecessary to employ the same legal rubric twice on brief as opposed to once. There was no abandonment of the issue of common law unfair competition, reflecting the fact that the analysis was the same. And the analysis was undertaken on pages, commenced on page 14 of plaintiff's opposition. And I'm going to find all of this in your appellate brief. I know that you, the part about what was properly in your complaint, that you did take issue with that in your appellate brief. But you also, somewhere in this appellate brief, I'm going to find the part where you talk about how you really did object to all of this on summary judgment. Yes. Okay. Good. Do you want to just tell me where? Well, I'll have to. Okay. On rebuttal, it's fine. Maybe you can talk on rebuttal and I'll be happy. But no, we indeed challenged the trial court's dismissal of the unfair competition as well as the section 43 claims. Because the court ruled that the section 43 claim wasn't adequately played, or wasn't played at all. However, the court reviewed count one, dealing with unfair competition, and honed in on the fact that in page 14, paragraph 66, plaintiff stated that the unfair competition claim was brought under the common law of the Commonwealth of Virginia. But the court didn't take into account the fact that in paragraph 61, plaintiffs alleged that their unfair competition case was brought under both federal law as well as state law. And with respect to the section 43 claim, registration of the trademark is not required. But you pled you had the trademark. As I read the complaint, maybe you can correct me on that, it looked like you pled as a registered. I agree that you can bring a claim for an unregistered trademark, but doesn't your complaint claim that you have a trademark? It does. It alleges both. It alleges a registered trademark as well as an unregistered trademark. If you don't mind, okay, I'll look back at it. I didn't see the unregistered part. Maybe you can also, during rebuttal, find where it mentions or discusses or makes the argument with respect to unregistered. I'm sorry, Your Honor? The question that my colleague just asked me? Yes. Asked you. Maybe you can go back and check that on rebuttal, too, and give us the JA reference where you do raise it. Well, the language doesn't specifically read unregistered, but in the trademark count of the complaint, it does mention registered trademark. In the unfair competition count of the complaint. My recollection is, and I'll confirm, there's not express reference made to a registered trademark. It's the fact that there's a trademark owned by the plaintiff's that has been utilized. One thing on the copyright issue, it looks like from the copyright issue that your primary reference is to the seal. Yes. It appears, and this wasn't in the JA, I confess, but it appears that seal is registered in another entity's name. The mother entity, I forget the exact phraseology, but it looks to me like you're claiming a copyright interest in the seal that's maybe depicted in the Constitution when there's another entity that has a specific copyright on that seal. Is that correct? I don't think the record reflects that the seal is copyrighted by some other entity. It may not. Maybe that's public record, though. I guess my point is you are claiming the seal in the context of something that's in a complete document. Yes. You don't claim an actual copyright specifically on the seal. Are we entitled to look at the copyright public records to see if another entity actually has a copyright on that seal? Well, the court can. However, the copyright registration registers the entire Constitution, the plaintiff's entire Constitution. On the front cover of the Constitution is indeed the seal. And then within the context of the Constitution is the definition of the seal, a narrative description of the seal. Clearly, defendants don't have the right to utilize the seal. But you don't have a right to complain about the use of a copyright that another entity owns. I mean, isn't it a little unfair to come to us and claim a copyright interest in the seal if another entity has actually filed and registered that mark? Well, I don't think the record reflects the existence of another entity owning the seal. Assume for purposes of the question that it does. Or the public record? Yes, the public record. That we can take judicial notice of the public record. So another entity owns it. Another entity owns the seal. Well, if another entity owns the seal, then that entity isn't complaining about plaintiff's use of the seal. Because there's an understanding with respect to that. If there's an understanding, then the use by the plaintiff would be permissive. I'm not saying you may or may not have the use, but you don't have the right to bring a copyright infringement claim for something that another entity owns. Is there any authority for that proposition? Well, if there is consent by that other entity, if it's the Mother Supreme Council, the Mother Supreme Council has acknowledged that Plaintiff's Supreme Council is a legitimate Prince Hall Scottish Rite entity. And there is an agreement with respect to the utilization of certain intellectual property rights amongst four of the United Supreme Council. Two being Prince Hall Supreme Councils and the other being Main Street Supreme Councils. Those entities have an understanding. That's what the record reflects. And there's no complaint lodged by the Mother Supreme Council, Southern Jurisdiction, with regards to plaintiff utilizing the seal. But you are trying to make their permission for you to use the seal into a weapon that you can use as part of an infringement action by someone else. And what my colleague is asking you is what's the authority for that? Well, if plaintiff's use is permissive and the record doesn't reflect any specific authority for plaintiff to pursue others in the regard. But our contention is the defendants are utilizing the seal that plaintiffs have a right to use. Because defendants are asserting that right as former members of plaintiff's organization. That there's clearly no basis for the defendants to utilize that right. And there's no basis for the defendants to suggest that they have any residual property rights in the fact that they're former members of plaintiff's organization. They don't have the ability to confer degrees 4 through 33. They don't have the ability to wear the regalia. They don't have the ability to hold themselves out as members of plaintiff's organization or as former members of the plaintiff's organization. So I think the argument is enveloped within that body of law. Your time has expired. You can go into your rebuttal time or you can stop now. Oh, I'll stop now. Thank you. Good morning. I'm Khalil Dozier on behalf of Defendants United Supreme Council of the District of Columbia, Ralph Slaughter, Joseph Williams, and Michael Parris. Counselor, can you put the microphone closer to you or talk louder? So I guess I can start out by just clarifying some of the gaps in the factual and legal record in the case here. And to the point that was just being discussed about the copyright, there is no legal authority for plaintiffs or anybody else to assert a copyright infringement claim in connection with a copyright that they do not own. In this case, the reason why the defendants did not raise or put in the record who owned the copyright of the Mother Supreme Council is because we looked in the copyright database and we saw that public record showed that the United Supreme Council or the Mother Supreme Council owned it, and there was no reason to assert a specific claim about who owned it. We just knew that the plaintiffs did not own it, and we briefed that on summary judgment, and we said the plaintiffs do not own a copyright for, they don't own a copyright over the seal. And we say the plaintiffs did not own a copyright really at all, because that was another issue that was, at least to us, confusing. And at the time this litigation was filed, again, neither one of the plaintiffs were, quote, valid corporations anyway. So we also contended that they could not own a copyright over the copyright that was identified in their first amended complaint. Can you go back to where we started with your colleague, to the standing capacity issue? Yes, Your Honor. Neither of the plaintiffs' appellees had standing at the time this lawsuit was filed. The plaintiffs conceded that the first named plaintiff... That organization was dissolved on April 2nd, 2012. And that's at page 678 in the record. Then the Defendant Supreme Council was registered or reserved its name with the District of Columbia Department of Consumer and Regulatory Affairs on October 13th, 2015. And that's at page 681 in the record. Then on October 14th, 2015, the Defendant Supreme Council became incorporated. And that's at page 541 in the record. After that, the plaintiffs filed suit on August 29th, 2016. At that time, the plaintiff, Grand Orient, was still a revoked and dissolved... Administratively dissolved District of Columbia Corporation. And then on September 26th, 2016, 11 months after the Defendant Supreme Council had incorporated and began operating, the plaintiffs filed an application to reinstate their corporation. And that's at page 69 in the record. And then two days later, on September 28th, 2016, the reinstatement became effective. And that's at page 68 in the record. So it was in the middle of this lawsuit when the plaintiffs, United Supreme Council, reinstated. They were not a valid corporation at the time of the filing of the lawsuit. But they existed. Under D.C. law, they continue to exist as an entity. So why isn't that enough for putting to one side questions about capacity to sue? If they exist as an entity and they've alleged a harm and they exist, I don't understand why that's not sufficient for Article III standing. I think it may raise questions about capacity to sue. For purposes of Article III standing, they existed for purposes of District of Columbia law, for the purpose of winding up affairs. But for Article III standing, they did not exist. They did not have Article III standing because there was an injury that they could suffer that was addressable in this lawsuit. What if your clients came in and stole cash or stole whatever property they had? They came in and literally just stole property. Are you saying this entity that's in the process of this, that's been dissolved, can't do anything to address that situation? Well, I think there's two things. I guess if they stole property and they believed it was criminal, I guess they would report it to the police. Couldn't they bring a conversion action and say, look, you've got my property. I need it to wind up my affairs. I think it's abandoned property. They were dissolved for three, maybe even four years. And so at that point, any property that they claimed they had would be abandoned. So anybody was free to go in and just take their property because they're dissolved? Is that your position? Yes, anybody could have done that, yes, because at that point, the corporations were dissolved. They moved, they established a totally separate corporation. What do you think D.C. law means when they say, but they continue to exist as a legal entity? What meaning do you give that language? It's right in the statute. They do exist. They exist for purposes of winding up the affairs and winding up the affairs only. It's a penalty. It's a disability on their status as a corporation. And so they can only, they cannot sue. I'm asking you to put to one side capacity to sue questions, which I do think are different. But I don't understand why a legal entity that exists, is there any Article III case law saying you exist, but you're in this kind of penalty dissolution phase, so therefore you cannot sustain an Article III injury? I believe the Spokio case deals with that in the sense that they say you have to have a redressable injury. Your argument on redressability sounds like a merits argument. Like, look, you're not going to be able to win your lawsuit because you did all this stuff that you weren't supposed to be doing under the statute. But that doesn't, I mean, they're saying someone took my stuff, I want to sue, and if I win, I'm going to get it back. And why is any of that wrong? I think there's two, I guess, I'm not totally clear on, I'm not totally clear on, I guess, the nature of their argument, but if they're saying, there's two different types of standing. I'm not clear if they're saying they had the organization, they said in their brief. Well, which are you saying they lack? I'm saying they lack standing. But what kind? You said there are two kinds. Oh, there is representational or associational standing. No, no, no, not that kind. Do you think they lack the regular kind of standing, the capacity to, Article III authority to sue on their own behalf? On their own behalf? Yeah. If they're suing on their own behalf. Well, that's what they're doing. Plaintiff grand orate suing on their own behalf, it wasn't organizational. Right, we're not talking about organizational. So, yes, and they can sue. They can sue on their own behalf. Okay. To the extent. So, they have Article III standing to sue on their own behalf. On their own behalf, if they meet the other requirements. Do they meet the Article III requirements to sue on their own behalf? Not associational standing. Maybe we just have a, maybe this is just a confusion thing. A moment of indulgence, Your Honor. See, we, I thought, and I thought that the district court thought, that because of this Washington, D.C. statute, they lacked standing to make any argument except a winding up, to sue on any basis except winding up. A moment of indulgence, Your Honor. I just want to refer back to the district courts, that portion of the district courts. But, it doesn't matter, is that correct or not? You don't have to tell us what the district court said. You can tell us whether that's correct or not. Yes, that's correct, Your Honor. Yes. No, I know it's correct, or I'm pretty sure it's correct, the district court said it. Do you recognize that that is the basis for finding standing? Yes, because that, it's controlled by the state. For the purpose of the grand orate, District of Columbia law determines the ability of the organization, determines the organization's ability to find standing. And determines the organization's ability to exist for purposes of Article III, standing in court. And, okay, the other issue is that whether the plaintiff can sue for an injury that occurred during the period of his dissolution. So, as a general rule, if plaintiffs can bring suit during the period, they can bring, the issue is not whether they can, generally speaking, bring suit during the period of his dissolution, but whether or not they can bring suit for an injury that occurred during the period of his dissolution. I think it's more of a time period thing. What they're doing here, they file a lawsuit during the period of their dissolution for an injury that they claim occurred during their dissolution. So, I think that's really the critical, that's really the critical issue here. There's a, generally speaking, yes, they would meet the, they can file a lawsuit for, even during a whining offense. They can sue and be sued. But then, when it gets down, when it gets to the more specific of the time period, are they suing, they were suing during the period of their dissolution, or injury that they claim occurred during the period of their dissolution. And that is what's prevented. I mean, I understand that argument, that there's a factual difference if the injury occurs during the period of dissolution. And I think there may be a District Court of Maryland case that is consistent with that notion. I guess what I'm trying to figure out is back to the question I had before. If they continue to exist and are winding up, it just strikes me as odd that they could be victimized by wrongful conduct. And I'm not suggesting, I'm not trying to reach that conclusion. But hypothetically, they could be victimized by wrongful conduct and then would have no recourse. Maybe that's the law. If you're dissolved and you're just, you have no weapons, you're sitting there and anyone can do whatever they want to you. It seems like that's an odd state of affairs, that they wouldn't have the right to respond to wrongful conduct during that time. The District of Columbia law does say that. I mean, I understand that there's a complicated interaction between state and federal law on this. But this isn't just about the authority of a dissolved corporation under District of Columbia law to prevail. It's about what Article III courts can and can't do. So that's sort of a different question. And it's a federal law question. And under federal law, if there's been an injury of fact and causation and redressability, regardless of whether they can prevail under D.C. law, we can at least hear the case. I mean, this is a question that goes to our jurisdiction, which is sort of a separate and really important question. And I'm not understanding why we should say we cannot even hear the case to decide whether or not they can prevail. If they were in legal existence, they're asserting an injury in fact. This is not a spokio problem. They are saying we were individually harmed, and it's because of what they did. And assuming we could win on our suit, which is a question that will be governed by D.C. law, at least in part, and it may be hard for them to win. But if they could, you can redress it. You can give them the money. They're still in existence. They can take the check. So I don't see the Article III constraint that would prevent us from hearing the case. There was no subject matter jurisdiction for the claim about the claim in order to talk about federal jurisdiction under the Land Act. Well, that's a different question than Article III standing. I don't want to argue with you, but I feel like I'm not quite getting the response to why this Court lacks jurisdiction because there's been a failure of Article III standing here. Quite apart from whether the dissolution prevents them from prevailing on the merits of their claim. Why can't we hear it? For standing reasons. Don't tell me about subject matter jurisdiction. I guess we would say, in the District Court, we didn't address whether or not the Court could hear it at the outset. I know. This didn't even come up until summary judgment, right? Well, we said at summary judgment that the Court had no standing or the plaintiffs had no standing at that point. But at the time of filing, there was no standing at all. The basis for standing, according to the plaintiffs, would have been after they established an existence in the middle of the lawsuit. You have to have standing at every stage of a lawsuit. So why didn't they have standing? Why don't they have standing at the beginning of the lawsuit when it's initiated, according to you? Because there was no legal or natural person at all. But there was a legal entity. Under D.C. law, this entity existed. It says that right in the statute. It existed for the limited purpose. It existed for a limited purpose. And there was no evidence. It says a domestic filing entity that is dissolved administratively continues its existence as an entity. And then there's a bunch of stuff it shouldn't do. But this statute goes out of its way almost to answer this question. In case there was any concern about Article 3 standing, we're resolving it right here and now by telling you all it continues to have a legal existence. And if it's got a legal existence, is there any law that says somehow per se it cannot be injured? No, Your Honor. Okay. So if it does have standing, the other side has standing, then did you waive the capacity claim by not asserting it as an affirmative defense? In terms of the... I mean, is that your claim, that they don't have capacity, right? In terms of the... We said that they didn't have capacity. We said they didn't have standing, they didn't have capacity. The plaintiffs didn't. I guess the capacity assumed and the standing assumed, we viewed them as two different things, but in some sense they were. Right, they were two different things. Agreed. So did you say as a defense separate and apart from standing they had no capacity? In the answer to the complaint, no, we did not raise that. And at the time there was and this was addressed elsewhere in summary judgment, but the counsel at the time did not raise any offenses and did not raise any affirmative defenses on behalf of me. Okay. But could you address whether, because Rule 17 has some issues that we have to consider if it is a capacity to sue issue. And we're kind of using those words maybe, I don't want to use them too casually. And if you look at the statute that Judge Harris was just referring to, 41205 when it talks about the things that a dissolved company cannot do, is that really a capacity to sue issue or is that the scope of what they can do? Are those one and the same or are those different? I have a question about whether you fall under the things that can be done or not is the same as capacity. For purposes of the rule. Do you have a position on that? In other words, maybe you use the word capacity to characterize what your thing is loosely. Yes, Your Honor. I understand. In terms of they wouldn't meet the requirements of the Rule 17, even the requirements of the District of Columbia statute they wouldn't meet the requirements of Rule 17 in part because the rule 17 does deal with Rule 17 they would say, well we're trying to still search violations of a mark. But they didn't have that either. They say, well we were this unincorporated association but there was no evidence of that either to invoke Rule 17. You want to try again? Is one possible way to think about it? A question. You know, because you didn't raise it in your answer, it seems possible that you have waived a claim now that you simply for sort of dismissal because you're the wrong, you can't raise this claim. You lack capacity to sue. But you can still argue on the merits, for instance, that look, none of these, no contract that you entered into with your members during this time period has any legal existence. All of those contracts are void because you were dissolved and therefore you can't bring a tortuous interference claim based on those contracts. That kind of merits argument would not be waived just because you failed to raise capacity to sue. Do you know what I'm saying? Any kind of merits argument you have that hinges on the fact that this entity was outside its authority under the statute as a dissolved corporation. You haven't waived any of that. All you've waived is, you know, get out of court at the threshold because you have no right to be here. Yes, I agree with that. Or maybe you've also waived making a formal capacity suit by not filing. So you've waived both those things but you still have this merits argument based on the same state of affairs. Yes. I'm sorry. I think I was getting confused by the language. So in terms of, once we got to summary judgment, we still had all of our arguments that plaintiffs could not prevail for substantive reasons. And on the substantive reasons first I would say here, in terms of waiver, they waived their unfair competition claim because they failed to respond to our motion for summary, our argument in motion for summary judgment. They waived their trademark infringement claim because they failed to respond to that in our motion for summary judgment. They waived their tortuous unfair competition claim, copyright infringement claim, and tortious interference claims because they failed to respond to our opposition for motion for summary judgment in that regard. And so then we raised those in our opening in our response brief and then they never the appellants never responded to that in their reply brief at all. So they waived it on appeal as well. So they're left with what they can legitimately try to press on appeal would be and they didn't respond to conspiracy at all so that's waived. They're left with tortious interference of contract and the fraud claim that was dismissed at 12D6. The fraud claim was properly dismissed because there was no, they didn't complete reliance and when they say they're the plaintiffs say well we were asserting associational standing but that type of fraud claim for damages would require individual participation and then the plaintiffs, the appellants also argue that their tortious interference claim but during the period of their dissolution under D.C. law they would not have any power to enter into contracts at all because there is no existence. You can't create new contracts or obligations even under D.C. law. In addition the tortious interference claim based on the way that the appellants construed it presents they never showed in the district court that any particular member that actually entered into this contract and their argument that well we have power to bind people to membership in perpetuity seems to violate the first amendment on associational first amendment right to free association. So none of the arguments, none of the claims that plaintiffs have in the merits would actually survive as the district court found. I think your time has expired. Your colleague on the other side had three minutes if you want to take an extra minute to sum up. Yes, your honor. So to sum up for us I believe that the court should refer to the district court's summary judgment in favor of each of the appellees because all of the claims pressed for appeal were either waived or lacked merit for plaintiff's failure to present a primary patient case. So we ask the court to affirm the dismissal of the summary judgment. Thank you. Thank you very much. Counsel do you have rebuttal? Yes. With regards to the questions associated with whether plaintiff alleged the existence of a registered trademark in paragraph 185 of the complaint reference is made to a registered trademark. However, in the preceding paragraph it is clear that the plaintiff has had pending at that time an application for a registered trademark. So the reference I'm speaking particularly to paragraph number 81 and paragraph number 181 and 182 which make express reference to there being pending applications. Then with respect to the copyright question I think the question was did the plaintiff challenge in its brief defendants position that plaintiff had no valid copyright infringement claim. I think that was Your Honor's question. During the course of oral argument on March 8th 2018 the record will reflect the fact that plaintiff's counsel directly addressed the copyright contentions arguing that defendant supreme counsel is in fact utilizing the rituals, the regalia and other protected activities by way of plaintiff's constitution during the course of their practicing Prenzlau Scottish Rite Masonry and the witness that that testimony came for was a Mr. Ronald Johnson and that deposition transcript is indeed in the record. With respect to the issues associated with for example the tortious interference with contract we believe that the court erred in concluding that the constitution of plaintiff's organization does not constitute first a contract and if so an enforceable contract. The law is clear in the Commonwealth of Virginia and it's articulated in the Gottlieb case as well as other cases cited in the Gottlieb case. Gottlieb decided at 199 Virginia 848 that the constitution of the voluntary association constitutes a contract with the association and its members and each member with the other unless that contract is void as a matter of public policy. Why isn't that contract void because because the entity with the constitution was administratively dissolved at the time it entered into the contract? Well the Isn't there a case saying that and I'm Well first of all the case that says that the Accenture case makes that representation but if the plaintiff existed for purposes of winding up the affairs of the entity plaintiff's contracts are not terminated because it's in that status whereby its existence is acknowledged for purposes of winding up the affairs and I thought that's exactly what the case said that even though the entity continues to exist it does not have the right to enter into contracts during that period and therefore those contracts are void. Well the court didn't draw that conclusion specifically with respect to the constitution. I was speaking in terms of the court below. Well but we have this precedent, right? Right, right. But the point Now that case was different from the case at hand. First of all that case didn't involve a non-profit entity it didn't involve, I'm speaking of Accenture, it didn't involve the construction of the most current District of Columbia statute. Yeah but it doesn't If we found it wasn't different in the purposes of this argument that wouldn't make any difference. Well but also with respect to the D.C. Code it is very clear that the obligations, the purpose and the function of the organization doesn't terminate merely because it's no longer in existence and I would ask the court Right, but what it can't do is enter into contracts that go beyond the wind-up of its affairs. Like everything you said is correct but it is also true that it can't enter into new contracts. Well in accordance with 29-412.05b3 dissolution of a non-profit corporation shall not change a quorum or voting requirements for its board of directors or members provisions for selecting resignation or removal of its directors or officers or both or provisions for amending its bylaws so that suggests that the contract that the organization, that is the dissolved entity has with its members continues and the contract is reflected in the bylaws and the constitution of the organization. Are you saying that all of the contracts at issue were entered into before the organization was dissolved because as I read the timeline what you were suing on was contracts by way of a constitution that were entered into after the organization was dissolved, no? Well, we didn't make particularly clear in the complaint as to when the contracts at issue were established. Well, some contracts were established prior to the dissolution. Some contracts were established subsequent to the dissolution. I'm sorry, when was the constitution in question ratified or whatever? Oh, so the constitution in question was established I want to say, well I have the constitution that's in the record, but it was renewed in 2012, meaning reaffirmed in 2012 but the constitution has existed for decades. Okay. I think to your last point that you didn't clarify with respect to people, individuals who may have joined the defendant's organization whether their involvement with your client preceded the dissolution or not. Correct, there's nothing in the record that says, for example those contracts preceded the dissolution. Well, the gentlemen, the defendants who established the Defendant Supreme Counsel were all senior leaders of plaintiff's organization and had been for several years. And were prior to the administrative dissolution. So those individuals, as well as persons who had long-standing, I think we plead that in the complaint long-standing relations, that is a long-standing contractual relationship with plaintiffs, were persuaded to leave plaintiffs, and we say unlawfully persuaded meaning there were improper means utilized by the defendants to leave the plaintiff's organization and join the defendant's organization. For example, defendant Mr. Parris intercepted, we refer to them as capital taxes, but assessments that are employed that is applied to various subordinate bodies of plaintiff's organization. Mr. Parris intercepted those dues and under the guise of escrow and those dues, well of course he had no authority from plaintiffs to escrow any of plaintiff's entitlements and those monies were intercepted and the record reflects they were never forwarded or ever provided to plaintiffs. So that's an improper method and an improper mean. Also Mr. Parris acting as an agent of Mr. Slaughter and Defendant Supreme Counsel was serving in the capacity of a double agent. He was an agent for the defendant and unbeknownst to plaintiff, he was plaintiff's agent in the Commonwealth of Virginia for purposes of overseeing plaintiff's operations in Virginia. And at that time he called a meeting, it was a subversive meeting on about November 28 2015 where he essentially put in place this mass exodus program whereby several members, more than 50% of plaintiff's members in Virginia left plaintiff's organization in order to become a member of defendant's organization. And then Mr. Parris with the express assent of Mr. Slaughter took over plaintiff's 91st Council on Deliberation which is plaintiff's statewide meeting Defendant Parris overtook that meeting utilizing plaintiff's 90 years of history in order to convene a statewide meeting where resources were collected and otherwise under the guise of plaintiff's organization but obviously benefit defendant's organization. So the court said there was no evidence of improper means and we beg to with the court's decision. Furthermore the court said that the constitution of plaintiff's organization is unenforceable. Counselor, you're now five minutes over in addition to your three minutes over the first time. So maybe you should wind up. I'll wind up if I could. There's no evidence of any First Amendment affront appearing on the face of plaintiff's contract and we would ask the court to reverse the trial court's dismissal of plaintiff's case based upon the lack of standing. We believe we've established that plaintiff not only had standing but that it was entitled to maintain the action and furthermore that defendants failed to assert legal capacity as an affirmative defense and therefore that intention is waived. Thank you. Thank you very much. We will come down and greet the lawyers and then we'll take a short recess.
judges: Diana Gribbon Motz, Pamela A. Harris, A. Marvin Quattlebaum Jr.